**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

THE RIDGE WALLET LLC,

                    Plaintiff,            Case No. 1:23-cv-02091-EK-TAM

        v.

BEMMO INC.,

                    Defendant.


**MEMORANDUM IN SUPPORT OF DEFENDANT BEMMO INC.'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**


**Date of Service: August 31, 2023**

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    FACTUAL BACKGROUND ..............................................................................2

    A.    The Parties and Plaintiff's Alleged Trade Dress.......................................2

    B.    Procedural History ....................................................................................3

III.   LEGAL STANDARD..........................................................................................3

IV.    ARGUMENT.......................................................................................................4

    A.    Plaintiff's Unregistered Trade Dress Infringement Claim Is Unsupported (Count II) ................................................................................4

        1.    Plaintiff's Description of the Alleged Trade Dress....................................4

        2.    The FAC Fails to Allege Secondary Meaning ...........................................6

        3.    The FAC Fails to Allege that the Asserted Trade Dress Is Non-Functional ....................................................................................................9

        4.    The FAC Fails to Address the Likelihood of Confusion .........................12

    B.    Plaintiff's Patent Infringement Claim Is Not Plausible and Is Unsupported (Count I)..............................................................................13

        1.    The Allegations in the FAC Do Not, and Cannot, Support a Claim for Direct Infringement...........................................................................13

        2.    The Allegations in the FAC Do Not, and Cannot, Support a Claim for Indirect Infringement........................................................................18

        3.    The Allegations in the FAC Do Not, and Cannot, Support a Claim for Willful Infringement .........................................................................20

        4.    Plaintiff Concedes That the Patent Claim Is Limited by the Marking Statute.........................................................................................21

    C.    The FAC Should Be Dismissed With Prejudice ....................................23

V.     CONCLUSION..................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A to Z Machining Serv., LLC v. Nat'l Storm Shelter, LLC*,
No. CIV-10-422-C, 2011 WL 6888543 (W.D. Okla. Dec. 29, 2011) ....................................22

*In re Am. Express Co. Shareholder Litig.*,
39 F.3d 395 (2d Cir.1994).............................................................................................23

*Amgen Inc. v. Coherus BioSciences, Inc.*,
931 F.3d 1154 (Fed. Cir. 2019).....................................................................................18

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
24 F.3d 178 (Fed. Cir. 1994)..........................................................................................22

*APP Grp. (Canada) Inc. v. Rudsak USA Inc.*,
No. 21-CV-7712 (VEC), 2022 WL 3227861 (S.D.N.Y. Aug. 10, 2022) .......................4, 5, 10

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
377 U.S. 476 (1964)........................................................................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................................3

*Benedict v. Amaducci*,
101 F.3d 1393 (2d Cir. 1996)..........................................................................................23

*Blackbird Tech LLC v. Argento SC By Sicura, Inc.*,
No. 21-cv-11018 (DLC), 2022 WL 3701084 (S.D.N.Y. Aug. 26, 2022).........................21, 22

*Bubble Genius LLC v. Smith*,
239 F. Supp. 3d 586 (E.D.N.Y. 2017) ..............................................................................7, 8

*Caraway Home, Inc. v. Pattern Brands, Inc.*,
No. 20 Civ. 10469, 2021 WL 1226156 (S.D.N.Y. Apr. 1, 2021)............................................5

*Cardinal Motors, Inc. v. H&H Sports Prot. USA, Inc.*,
No. 20-cv-7899-PAC, 2022 WL 4109721 (S.D.N.Y. Sept. 8, 2022) ......................................5

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
No. 11-CV-3677, 2013 WL 1209041 (E.D.N.Y. Mar. 25, 2013)...................................8, 9, 11

*Chrimar Sys. Inc. v. Ruckus Wireless, Inc.*,
    No. 16-CV-00186-SI, 2020 WL 4431787 (N.D. Cal. July 31, 2020)....................................22

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed. Cir. 2017)........................................................................................20

*Cognex Corp. v. Microscan Sys., Inc.*,
    990 F. Supp. 2d 408 (S.D.N.Y. 2013)................................................................................22

*Cotiviti, Inc. v. McDonald*,
    No. 19-cv-6559 (VSB), 2021 WL 2784529 (S.D.N.Y. July 2, 2021) ..................................3, 4

*Coulter v. Morgan Stanley & Co.*,
    753 F.3d 361 (2d Cir. 2014)..............................................................................................4

*Diamond Collection, LLC v. Underwraps Costume Corp.*,
    No. 17-CV-0061(JS)(SIL), 2019 WL 347503 (E.D.N.Y. Jan. 22, 2019) ...............................6

*DO Denim, LLC v. Fried Denim, Inc.*,
    634 F. Supp. 2d 403 (S.D.N.Y. 2009)................................................................................12

*DSU Med. Corp. v. JMS Co.*,
    471 F.3d 1293 (Fed. Cir. 2006)....................................................................................18, 19

*e-Watch Inc. v. Avigilon Corp.*,
    No. CIV.A. H-13-0347, 2013 WL 5231521 (S.D. Tex. Sept. 16, 2013)................................22

*Eagle Pharms., Inc. v. Slayback Pharma LLC*,
    382 F. Supp. 3d 341 (D. Del. May 9, 2019) ......................................................................18

*Eliya, Inc. v. Kohl's Corp.*,
    No. CV 15-2123(JFB)(GRB), 2016 WL 929266 (E.D.N.Y. Feb. 22, 2016)..........................11

*Eliya, Inc. v. Steven Madden, Ltd.*,
    749 F. App'x 43 (2d Cir. 2018) ...................................................................................12, 13

*Eliya, Inc. v. Steven Madden, Ltd.*,
    No. 15-CV-1272 (DRH)(SIL), 2018 WL 1796228 (E.D.N.Y. Jan. 11, 2018) ...........12, 13, 23

*Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*,
    784 F.Supp.2d 441 (S.D.N.Y. 2011)...................................................................................9

*First Brands Corp. v. Fred Meyer, Inc.*,
    809 F.2d 1378 (9th Cir. 1987) ........................................................................................10

*Gart v. Logitech, Inc.*,
    254 F.3d 1334 (Fed. Cir. 2001)........................................................................................21

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)......................................................................................19

*Green Crush LLC v. Paradise Splash I, Inc.*,
    No. SACV 17-01856-CJC(JDEx), 2018 WL 4940825 (C.D. Cal. May 3, 2018)....................7

*Guzik Tech. Enterprises, Inc. v. W. Digital Corp.*,
    No. 11-CV-03786-PSG, 2012 WL 1669355 (N.D. Cal. May 11, 2012) ...............................19

*Honeywell Int'l Inc. v. ICM Controls Corp.*,
    45 F. Supp. 3d 969 (D. Minn. 2014) ....................................................................11

*Int'l Leisure Prod., Inc. v. FUNBOY LLC*,
    747 F. App'x 23 (2d Cir. 2018) .............................................................................5

*It's a New 10, LLC v. Harmon Stores, Inc.*,
    No. 17-CV-4231 (JPO), 2017 WL 3208611 (S.D.N.Y. July 28, 2017)...................................12

*Lans v. Digital Equip. Corp.*,
    252 F.3d 1320 (Fed. Cir. 2001)............................................................................22

*LaserDynamics USA, LLC v. Cinram Grp., Inc.*,
    No. 15 CIV. 1629 RWS, 2015 WL 6657258 (S.D.N.Y. Oct. 30, 2015)................................19

*Mana Prod., Inc. v. Columbia Cosms. Mfg., Inc.*,
    65 F.3d 1063 (2d Cir. 1995)................................................................................10

*Mattel, Inc. v. MGA Entm't Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ..................................................................10

*Maxwell v. J. Baker, Inc.*,
    86 F.3d 1098 (Fed. Cir. 1996)..............................................................................21

*Michigan Motor Techs. LLC v. Volkswagen Aktiengesellschaft*,
    472 F. Supp. 3d 377 (E.D. Mich. 2020)................................................................20

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
    No. 2:20-cv-04556-AB, 2020 WL 6821013 (C.D. Cal. Oct. 29, 2020) .................................5

*NSI Int'l, Inc. v. Horizon Grp. USA, Inc.*,
    No. 20-CV-8389 (JGK), 2021 WL 3038497 (S.D.N.Y. July 16, 2021) .................................6

*Ottah v. Fiat Chrysler*,
    884 F.3d 1135 (Fed. Cir. 2018)............................................................................18

*PLC Trenching Co., LLC v. IM Servs. Grp., LLC*,
    No. 1:20-CV-00602-CWD, 2021 WL 3234590 (D. Idaho July 29, 2021) .............................22

*R & A Synergy LLC v. Spanx, Inc.*,
 No. 2:17-CV-09147-SVW-AS, 2019 WL 4390564 (C.D. Cal. May 1, 2019) ........................7

*Rosenshine v. A. Meshi Cosmetics Indus. Ltd.*,
 No. 18-cv-3572 (LDH), 2020 WL 1914648 (E.D.N.Y. Mar. 30, 2020).................................4

*Seal-Flex, Inc. v. Athletic Track & Court Constr.*,
 172 F.3d 836 (Fed. Cir. 1999)...............................................................................13

*Straight Path IP Grp., Inc. v. Vonage Holdings Corp.*,
 No. CIV.A. 14-502 JLL, 2014 WL 1266623 (D.N.J. Mar. 26, 2014) ...................................20

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
 532 U.S. 23 (2001)............................................................................................9, 10

*Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
 No. 12 CIV. 3599 RWS, 2012 WL 3240442 (S.D.N.Y. Aug. 7, 2012) .............................6, 9

*Valinge Innovation AB v. Halstead New England Corp.*,
 No. CV 16-1082, 2018 WL 2411218 (D. Del. May 29, 2018)................................21

*Vita-Mix Corp. v. Basic Holding, Inc.*,
 581 F.3d 1317 (Fed. Cir. 2009)..........................................................................20

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
 529 U.S. 205 (2000)..........................................................................................4, 6

*Wonderful Co. LLC v. Nut Cravings Inc.*,
 No. 1:21-CV-03960 (MKV), 2022 WL 4585344 (S.D.N.Y. Sept. 29, 2022) .................6, 7, 8

*Xiamen Baby Pretty Prod. Co. v. Talbot's Pharms. Fam. Prod., LLC*,
 No. 3:21-CV-00409, 2022 WL 509336 (W.D. La. Feb. 18, 2022).........................21

**Statutes**

15 U.S.C. § 1125(a) ...........................................................................................3, 9

35 U.S.C. § 271(c) .............................................................................................19

35 U.S.C. § 286..................................................................................................21

35 U.S.C. § 287..................................................................................................21, 22

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................1

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Bemmo Inc. ("Defendant") moves this Court for an Order dismissing Plaintiff The Ridge Wallet LLC's ("Plaintiff") First Amended Complaint (ECF No. 13, "FAC.").

## I.    INTRODUCTION

This case relates to a slim "sandwich"-type wallet. Plaintiff The Ridge Wallet, LLC ("Plaintiff") broadly seeks to prevent any competitors from selling a wallet with a "forged carbon" pattern in a red color. Plaintiff knows it cannot possibly hold the exclusive right to use such ubiquitous pattern, which Plaintiff only uses on *one* of dozens of wallet offerings, as shown, in small part, below:



(ECF No. 13-8; ECF No. 13-10; ECF No. 13-14); *see also* www.ridge.com/collections/wallets. Nonetheless, in an effort to force Defendant out of the market, Plaintiff alleges that Defendant has engaged in infringement of unregistered trade dress. But this claim includes no factual support and cannot withstand dismissal.

As with its prior attempt, Plaintiff's trade dress infringement claims here include no factual support and cannot withstand dismissal. Plaintiff does not even identify with any particularity what it asserts to be its unregistered trade dress. Plaintiff's inability to precisely articulate its alleged trade dress, despite multiple attempts, confirms that it has no viable claim. In any event, the FAC fails to explain how the generic color elements it seems to describe as making up the asserted trade dress are distinctive or non-functional. And the FAC does not plausibly allege that the design of Defendant's product is confusingly similar to Plaintiff's alleged unregistered trade dress. Accordingly, Plaintiff's trade dress infringement claim should be dismissed with prejudice.

The only other claim in the FAC—infringement of U.S. Patent No. 10,791,808 ("the '808 Patent")—also must be dismissed. The idea of a slim "sandwich"-type wallet with a clip attached is hardly unique, as evidenced by the prior art cited on the face of the '808 Patent. Rather, the '808 Patent was only allowed due to its requirement for a very specific structure for a removable money clip, which is not included in Defendant's accused wallet. Further, even if Plaintiff's direct infringement claim could survive (it cannot), Plaintiff's claims for indirect and willful infringement, and for damages prior to actual notice, should be dismissed.

## II.    FACTUAL BACKGROUND

### A.    The Parties and Plaintiff's Alleged Trade Dress

Defendant is a New York-based retailer of wallets under its BEMMO® mark. Defendant's products are sold online, including on Amazon.com ("Amazon").

According to the FAC, Plaintiff "is the owner of U.S. Patent No. 10,791,808 and the owner

of common law trade dress styled as a forged carbon surface speckled with the color red and characterized by the term '*Forged Ember*.'"  (FAC ¶ 14.)  However, Plaintiff admits that it has only sold the "Forged Ember" color of its slim wallets for about **two years** and that it is just one of **dozens** of color options in its line of slim wallets.  (*Id.* at ¶¶ 25, 32, 48, 51.)

### B.    Procedural History

On March 17, 2023, Plaintiff filed the original complaint against Defendant, alleging claims for: (I) patent infringement of the '808 Patent; and (II) trade dress infringement under 15 U.S.C. § 1125(a) based on alleged trade dress that is unregistered with the USPTO.  (ECF No. 1.)  On May 30, 2023, Defendant sought leave to file a motion to dismiss the original Complaint. (ECF No. 11.)  Plaintiff responded on June 5, 2023 (ECF No. 12), and subsequently filed the FAC on June 20, 2023.  Because the FAC included the same deficiencies as the original Complaint, Defendant sought leave to file a motion to dismiss the FAC on July 5, 2023. (ECF No. 15.)  Plaintiffs responded on July 10, 2023.  (ECF No. 16.)  The Court granted Defendant's request, and set a briefing schedule on August 1, 2023.

### III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"At the motion to dismiss phase, the court may consider the complaint, documents attached to the complaint or incorporated by reference, or matters of which judicial notice may be taken under Federal Rule of Evidence 201."  *Cotiviti, Inc. v. McDonald*, No. 19-cv-6559 (VSB), 2021

WL 2784529, at *6 (S.D.N.Y. July 2, 2021). "[F]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." *Id.* "If a court does take judicial notice of a website, the website's purposes at the motion-to-dismiss stage are limited in that it can be used only for determining what the documents state and not to prove the truth of their contents." *Id.*

Where amendment of an insufficient complaint would be futile, dismissal with prejudice is appropriate. *See Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 368 (2d Cir. 2014).

## IV.    ARGUMENT

### A.    Plaintiff's Unregistered Trade Dress Infringement Claim Is Unsupported (Count II)

"To state a claim for product design trade dress infringement, a plaintiff must provide a precise expression of the character and scope of the claimed trade dress . . . ." *APP Grp. (Canada) Inc. v. Rudsak USA Inc.*, No. 21-CV-7712 (VEC), 2022 WL 3227861, at *2 (S.D.N.Y. Aug. 10, 2022).[1] *Id.* "A plaintiff also 'must allege that (1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the [parties'] goods.'" *Id.*; *see also Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000). The FAC fails to adequately allege any of these elements.

#### 1.    Plaintiff's Description of the Alleged Trade Dress

As noted above, "[a] plaintiff asserting a trade dress infringement claim must . . . offer a ***precise expression*** of the character and scope of the claimed trade dress." *Rosenshine v. A. Meshi Cosmetics Indus. Ltd.*, No. 18-cv-3572 (LDH), 2020 WL 1914648, at *9 (E.D.N.Y. Mar. 30, 2020).

---

[1] All internal citations and quotations omitted herein. In addition, all emphasis is added herein.

Here, Plaintiff still does not articulate its trade dress with precision. While the original Complaint defined the asserted "Ridge Forged Ember Trade Dress" as "the overall exterior appearance and styling of the wallet design, including a carbon fiber wallet with red speckling" (ECF No. 1, ¶¶ 14, 38)—the FAC broadly defines the "Forged Ember Trade Dress" as "consist[ing] of the overall exterior appearance and styling of a compact wallet, which ***includes*** an irregularly-shaped geometric red speckling pattern on a carbon fiber surface, consisting of various shades of gray and black, positioned to cover one or more of the wallet's exterior plates." (FAC ¶ 44.) Not only is this description open-ended and imprecise, it conflicts with other descriptions elsewhere in the FAC where Plaintiff alleges that it uses "Forged Ember Trade Dress on a variety of merchandise and products." (FAC ¶ 32; *see also id.* ¶¶ 14, 26, 32 (citing ECF Nos. 13-6 & 13-8).)

"Given Plaintiff[s'] failure to clearly identify the concrete elements of the trade dress sought to be asserted in this action, the claim must be dismissed." *Mosaic Brands, Inc. v. Ridge Wallet LLC*, No. 2:20-cv-04556-AB (JCx), 2020 WL 6821013, at *6 (C.D. Cal. Oct. 29, 2020); *see also, e.g.*, *Int'l Leisure Prod., Inc. v. FUNBOY LLC*, 747 F. App'x 23, 26 (2d Cir. 2018) (affirming dismissal of "impermissibly overbroad" trade dress claim "that would encompass any bird-shaped pool float"); *Cardinal Motors, Inc. v. H&H Sports Prot. USA, Inc.*, No. 20-cv-7899-PAC, 2022 WL 4109721, at *4 (S.D.N.Y. Sept. 8, 2022) (dismissing claim where trade dress defined by "imprecise descriptors"); *APP Grp. (Canada) Inc. v. Rudsak USA Inc.*, No. 21-CV-7712 (VEC), 2022 WL 3227861, at *3, *5 (S.D.N.Y. Aug. 10, 2022) (finding plaintiffs "failed adequately to describe [their] claimed trade dress" where plaintiffs "equivocate[d] as to whether the collar and zipper are to be considered together or separately for trade dress purposes"); *Caraway Home, Inc. v. Pattern Brands, Inc.*, No. 20 Civ. 10469, 2021 WL 1226156, at *6

(S.D.N.Y. Apr. 1, 2021) ("unclear or overbroad allegations pose an anti-competitive risk");
*Diamond Collection, LLC v. Underwraps Costume Corp.*, No. 17-CV-0061(JS)(SIL), 2019 WL
347503, at *8 (E.D.N.Y. Jan. 22, 2019) (dismissing trade dress claims because plaintiff did not
"identif[y] the particular character and scope of its purported costume trade dress"); *Urb. Grp.
Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12 CIV. 3599 RWS, 2012 WL
3240442, at *4 (S.D.N.Y. Aug. 7, 2012) ("[A] plaintiff's inability to explain to a court exactly
which aspects of its product design(s) merit protection may indicate that its claim is pitched at an
improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme
or idea."); *NSI Int'l, Inc. v. Horizon Grp. USA, Inc.*, No. 20-CV-8389 (JGK), 2021 WL 3038497,
at *6 (S.D.N.Y. July 16, 2021) ("[I]mages alone do not satisfy the plaintiff's obligation to
articulate the distinctive features of the trade dress.").[2]

### 2.    The FAC Fails to Allege Secondary Meaning

Product "design, like color, is not inherently distinctive." *Wal-Mar*, 529 U.S. at 212.  Thus,
a party asserting unregistered trade dress in a product design must show that the design has
acquired secondary meaning, which means that "in the minds of the public, the primary
significance of [the design] is to identify the source of the product rather than the product itself."
*Id.* at 211.  The FAC does not plausibly plead this element.

"Factors relevant to the secondary meaning analysis include: (1) advertising expenditures,
(2) consumer studies, (3) unsolicited media coverage, (4) sales success, (5) attempts to plagiarize
the dress, and (6) the length and exclusivity of the dress's use."  *Wonderful Co. LLC v. Nut
Cravings Inc.*, No. 1:21-CV-03960 (MKV), 2022 WL 4585344, at *2 (S.D.N.Y. Sept. 29, 2022).

---

[2] The FAC amends the original Complaint to allege that Plaintiff's "'Forged Ember' trade dress
[is] pending Application Serial No. 98/044,380." (FAC ¶ 2.) The referenced trademark application
was filed on June 15, 2023 and has not been taken up by the USPTO as of the service of this
Motion.

"These factors 'militate against a finding of secondary meaning.'" *Id.* (quoting *Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12 CIV. 3599, 2013 WL 866867, at *5 (S.D.N.Y. Mar. 8, 2013)).

"With respect to advertising expenditures (factor one), plaintiffs *generally* allege that they have expended substantial amounts of money on advertising." *Wonderful*, 2022 WL 4585344, at *3 (emphasis in original). The FAC's vague definition of the asserted trade dress contributes to its failure to plausibly allege that secondary meaning has attached to the alleged trade dress. While the FAC alleges that Plaintiff "has sold millions of dollars' worth of products," it does not appear that that allegation is tied to the description of the alleged trade dress in Paragraph 44 since it refers to "[r]epresentative examples" of its merchandise that are neither wallets nor black and red in color. (FAC ¶ 32 (citing ECF No. 13-8.).) And the FAC does not allege that Plaintiff's marketing or sales stressed the description of the trade dress included in Paragraph 44 rather than the product as a whole. (*See id.* ¶¶ 27–35.) Notably, as shown above, Plaintiff has marketed its wallets in a rainbow of colors. *Wonderful*, 2022 WL 4585344, at *3 (finding no plausible allegation of secondary meaning where, *inter alia*, the complaint's "vague allegation [was] insufficient to indicate 'that any of the advertisements stressed or emphasized the alleged trade dress'") (quoting *Urb. Grp.*, 2013 WL 866867, at *3); *see also Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 598 (E.D.N.Y. 2017) ("The Amended Complaint is also silent as to whether plaintiff's advertising stressed the elements of the trade dress."); *R & A Synergy LLC v. Spanx, Inc.*, No. 2:17-CV-09147-SVW-AS, 2019 WL 4390564, at *7 (C.D. Cal. May 1, 2019) ("Plaintiff has not alleged that it sufficiently urged consumers to associate any particular feature of the Sleevey products with the Sleevey brand . . . ."); *Green Crush LLC v. Paradise Splash I, Inc.*, No. SACV 17-01856-CJC(JDEx), 2018 WL 4940825, at *5 (C.D. Cal. May 3, 2018) (dismissing trade

dress claim because, *inter alia*, Plaintiff "failed to 'identify what the consuming public accepts and recognizes about the trade dress'") (quoting *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. 15-769 PSG (SSx), 2015 WL 12731929, at *5 (C.D. Cal. May 8, 2015)).

With respect to consumer studies (factor two), the FAC "is entirely devoid of allegations." *Wonderful*, 2022 WL 4585344, at *3; *Bubble Genius*, 239 F. Supp. 3d at 599 (explaining that "consumer recognition is not supported by" "anecdotal statements" that do not discuss "elements comprising the claimed trade dress").

With respect to unsolicited media coverage (factor three), three articles are hardly "significant" (FAC ¶ 35) and, again, do not stress the alleged trade dress. (*See, e.g.*, ECF No. 13-10 (canvassing nine different Ridge products).)

With respect to sales success (factor four), the FAC alleges that Plaintiff "has sold millions of dollars' worth of products that display the Forged Ember Trade Dress." (FAC ¶ 32.) But sales success alone unaccompanied by a concomitant effort on the seller's part to associate the alleged trade dress with the ***source*** of the product rather than the product itself, do not establish that the alleged trade dress has acquired secondary meaning. *See, e.g.*, *Carson Optical, Inc. v. Prym Consumer USA*, Inc., 11 F. Supp. 3d 317, 344 (E.D.N.Y. 2014) (explaining that a "blanket assertion that [the plaintiff's product] has been a sales and marketing success, has sold over a million magnifiers and has captured a more-than-expected market share, without any details of plaintiffs' efforts to associate the [product's] trade dress with [plaintiff], fails to support an inference of consumer identification with the alleged trade dress").

With respect to attempts to plagiarize the dress (factor five), the FAC "includes no allegations . . . apart from Defendant's alleged copying." *Wonderful*, 2022 WL 4585344, at *3; *see also Bubble Genius*, 239 F. Supp. 3d at 600 (finding factor weighed against a finding of

secondary meaning where the only alleged plagiarism was the conduct at issue). Although Paragraph 37 of the FAC alleges that "[Plaintiff] has scrupulously enforced and protected its Forged Ember Trade Dress and the '808 Patent", it does not allege any instances of copying of the alleged trade dress and seems to refer to enforcement efforts concerning the '808 Patent.

With respect to the final factor, length and exclusivity of the dress's use (factor six), the FAC admits that the asserted trade dress has only been used for about two years.

Plaintiff's conclusory statements regarding distinctiveness are insufficient to withstand dismissal. *See also, e.g.*, *Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*, 784 F.Supp.2d 441, 445, 448, 449 (S.D.N.Y. 2011) (complaint did not plead secondary meaning despite alleging "exclusive and widespread use," "enormous value and recognition," and that trade dress was "well known to the consuming public"); *Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12 CIV. 3599 RWS, 2012 WL 3240442, at *7 (S.D.N.Y. Aug. 7, 2012) (complaint did not adequately allege secondary meaning where it failed to allege facts relating to the plaintiff's "advertising expenditures, consumer surveys, prior attempts to plagiarize the trade dress or that Plaintiff exclusively uses the color scheme alleged"); *Carson Optical*, 11 F. Supp. 3d at 344 (complaint failed to plead secondary meaning where it lacked facts "concerning actual consumer surveys, unsolicited media coverage or specific attempts to plagiarize the trade dress at issue").

### 3. The FAC Fails to Allege that the Asserted Trade Dress Is Non-Functional

Plaintiff bears the burden of proving the alleged trade dress is non-functional, 15 U.S.C. § 1125(a)(3), and there is a "statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 30 (2001). "A product feature is considered to be functional in a utilitarian sense if it is (1) essential to the use or purpose of the article, or if it (2) affects the cost or quality of the article." *Shandong*, 2021 WL 736710, at *22. A feature is aesthetically functional

if "giving the markholder the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage." *Id.*

Here, Plaintiff does not and cannot plausibly allege that the few trade dress elements that it identifies are non-functional. The colors black and red are basic colors used in fashion articles. *See First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381–82 (9th Cir. 1987) (affirming finding of functionality for the color yellow used on an ordinary shaped container); *Mattel, Inc. v. MGA Entm't Inc.*, 782 F. Supp. 2d 911, 1007 (C.D. Cal. 2011) ("a box shape or certain uses of color constitutes a true aesthetically functional feature").

The FAC argues that forged carbon pattern including the color red is not functional since "[n]umerous other . . . designs are available." (FAC ¶¶ 48–49.) But, just because other competitors have chosen to make wallets in other materials and colors does not mean that granting Plaintiff the exclusive right to a specific color for a fashion product would not "put competitors at a significant non-reputation-related disadvantage" *APP Grp.*, 2022 WL 3227861, at *4; *cf. Mana Prod., Inc. v. Columbia Cosms. Mfg., Inc.*, 65 F.3d 1063, 1071 (2d Cir. 1995) (agreeing with district court's finding that "the color black [cannot] reasonably be given protection [for a makeup case] since it would be analogous to according trade dress protection to a product's plain brown wrapper merely because it did not have to be brown").

Indeed, many competitors and designers of other goods have chosen similar designs because it imitates forged carbon:

  

*See* https://shopvcs.va.gov/p/134811/forged-carbon-fiber-wallet (GRID-branded "Forged Carbon Fiber Wallet"); https://carbonfibergear.com/products/grip6-forged-carbon-fiber-wallet ("Grip6 Forged Carbon Fiber Wallet"); https://www.youtube.com/watch?v=w_gLmZX3yfo ("Glass Forged Carbon Fiber Nautilus" craft); *see also* https://en.wikipedia.org/wiki/Forged_composite (explaining that forged carbon was developed in about 2010 by Lamborghini and Callaway Golf). *Cf. Honeywell Int'l Inc. v. ICM Controls Corp.*, 45 F. Supp. 3d 969, 1000 (D. Minn. 2014) ("[C]ommon experience confirms the functionality of many of the elements that make up Honeywell's claimed trade dress. For example, although alternatives may be possible, black and gray are common choices for housings for technical equipment . . . .").

Moreover, Plaintiff has not made any ***factual*** allegations that would overcome the presumption of functionality. The FAC's discussion of functionality merely states in a conclusory manner that The Ridge Forged Ember Trade Dress is non-functional by reciting the legal standard, without attempting to explain ***how*** the (albeit undefined) elements of the asserted trade dress are non-functional. (FAC ¶¶ 48–49, 80.) Plaintiff's trade dress claim should be dismissed for this reason also. *See, e.g.*, *Shandong*, 521 F. Supp. 3d at 261 ("[O]ne sentence . . . stating that '[t]he CONG BAN LV Trade Dress is inherently distinctive and not functional' . . . is insufficient to allege nonfunctionality."); *Eliya, Inc. v. Kohl's Corp.*, No. CV 15-2123(JFB)(GRB), 2016 WL 929266, at *7 (E.D.N.Y. Feb. 22, 2016) (finding amended complaint did not sufficiently plead non-functionality where it alleged that competitors could use "alternative designs" and noting that "common sense and experience suggest[ed]" that "the claimed features give every indication of referring to functional elements"), *adopted*, 2016 WL 929321 (E.D.N.Y. Mar. 9, 2016); *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, No. 11-CV-3677, 2013 WL 1209041, at *1 (E.D.N.Y. Mar. 25, 2013) ("[F]ailure to plead non-functionality with factual particularity establishes merely

the possibility and not the plausibility of and is therefore fatal to plaintiffs' trade dress claim.");

*DO Denim, LLC v. Fried Denim, Inc.*, 634 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) (dismissing trade dress claim where amended complaint "contains no factual allegations as to whether protecting the Dragon Design in the manner contemplated by Plaintiff would put competitors at a significant non-reputation-related disadvantage").

### 4.   The FAC Fails to Address the Likelihood of Confusion

The final factor, "likelihood of confusion," in the context of trade dress, is determined using the same factors used in the ordinary trademark context (i.e., the *Polaroid* factors), namely, "(1) the strength of the plaintiff's mark or dress; (2) the similarity between the two marks or dresses; (3) the proximity of the products in the marketplace; (4) the likelihood that the prior owner will bridge the gap between the products; (5) evidence of actual confusion; (6) the defendant's bad faith; (7) the quality of defendant's product; and (8) the sophistication of the relevant consumer group."  *Eliya, Inc. v. Steven Madden, Ltd.*, No. 15-CV-1272 (DRH)(SIL), 2018 WL 1796228, at *9 (E.D.N.Y. Jan. 11, 2018), *adopted*, 2018 WL 1027157 (E.D.N.Y. Feb. 22, 2018), *aff'd*, 749 F. App'x 43 (2d Cir. 2018).  Courts consider whether the asserted trade dress "create the same general overall impression such that a consumer who has seen the plaintiff's trade dress would, upon later seeing the defendant's product in its trade dress alone, be confused." *It's a New 10, LLC v. Harmon Stores, Inc.*, No. 17-CV-4231 (JPO), 2017 WL 3208611, at *2 (S.D.N.Y. July 28, 2017).

The FAC fails to plausibly allege a likelihood of confusion. As discussed above, Plaintiff has "failed to adequately articulate the distinctive features that [they] claim[] comprise the [Ridge Forged Ember Trade Dress]." *Eliya*, 2018 WL 1796228, at *9. And, even if the Court were to consider the visual depictions included in the FAC, a side-by-side comparison shows that

Defendant's product is not "similar enough to" Plaintiffs' "that a consumer might well confuse them." *Id.* Rather, they utilize visually distinct designs.[3]

**Plaintiff's Product**          **Defendant's Product**



(FAC ¶ 81.)                    (FAC ¶ 83.)

The FAC's mere allegation that the accused product uses the colors black, gray and red on a wallet (FAC ¶¶ 83) is insufficient to plausibly allege a likelihood of confusion, and Plaintiff's trade dress claim should be dismissed with prejudice. *See, e.g.*, *Eliya, Inc. v. Steven Madden, Ltd.*, 749 F. App'x 43, 47–48 (2d Cir. 2018) (affirming dismissal where likelihood of confusion allegations were "entirely conclusory").

**B.    Plaintiff's Patent Infringement Claim Is Not Plausible and Is Unsupported (Count I)**

**1.  The Allegations in the FAC Do Not, and Cannot, Support a Claim for Direct Infringement**

To directly infringe a patent claim, the accused device must meet each claim element either literally or under the doctrine of equivalents. *See Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999).

---

[3] Plaintiff does not even attempt to explain how an accused wallet that prominently displays Defendant's trademark could be confused as originating from Plaintiff.

Asserted Claim 1 of the '808 Patent covers:

1. A compact wallet, comprising:
   at least two rigid plates interposed to sandwich card-like contents there between, each rigid plate having a longitudinal extent;
   at least one encircling elastic band interposed with the at least two rigid plates along longitudinal extents thereof to bias them inwardly and securely hold the card-like contents while providing elastic volume there between for adding or removing contents;
   a channeling means configured to minimize the profile of the wallet and hold position of the at least one encircling elastic band with respect to each rigid plate while allowing freedom for the dynamic extension and contraction of the band over the entire running length thereof; and
   an ***auxiliary feature <u>removably</u> attached*** to at least one of the at least two rigid plates, the auxiliary feature having a tang insertable into a recess formed inside the at least two rigid plates, ***the tang having a hook***, the hook extending at an angle to the tang, the ***<u>hook engaging an undercut of the recess</u>*** to prevent inadvertent dislodgement of the auxiliary feature from the recess,
   whereby, card-like contents may be carried with minimal silhouette on or with a person while allowing expandable capacity and ready access to individual contents from between the at least two rigid plates.

(ECF No. 13-12, Col. 6:40–65.)

Similarly, asserted Claim 14 of the '808 Patent covers:

14. A compact wallet, comprising:
    at least two rigid plates interposed to sandwich card-like contents there between, each rigid plate having a groove along a longitudinal extent thereof;
    at least one encircling elastic band slidingly interposed in the grooves to bias the at least two rigid plates inwardly and securely hold the card-like contents while providing elastic volume there between for adding or removing contents, the grooves configured to hold position of the at least one encircling elastic band with respect to each rigid plate while allowing freedom for the dynamic extension and contraction of the band over the entire running length thereof; and
    a recess formed inside at least one of the at least two rigid plates, the recess operable to receive a tang of an auxiliary feature, ***the <u>recess</u> having an <u>undercut</u> operable to engage a <u>hook</u> of the tang*** to prevent inadvertent dislodgement of the auxiliary feature from the recess when ***the auxiliary feature is <u>removably</u> positioned*** in at least one of the at least two rigid plates, the hook extending at an angle to the tang,

14

> whereby, card-like contents may be carried with minimal silhouette on or with a person while allowing expandable capacity and ready access to individual contents from between the at least two rigid plates.

(*Id.* at Col. 7:43–67.)

Neither of these claims of the '808 Patent can plausibly be construed to cover Defendant's accused wallet, at least because it does not meet the specific structure required for the "removably" attached money clip that includes, *inter alia*, a "hook" that "engage[s]" with an "undercut" in the "recess" between the two sandwiching plates of the wallet.

**'808 Patent**                                      **Accused Product**



(ECF No. 13-12, '808 Pat., Figs. 12 & 13.)          (ECF No. 13-20 at 5.)

As shown above, the accused product does not have "tangs," or for that matter, "hooks" that extend from so-called "tangs." Nor does the accused product have any "undercut" of a "recess" that engages the "hook" of a "tang" to "prevent inadvertent dislodgement." Indeed, as shown in the photo of the accused product above and below, the money clip portion of the accused product is securely fastened to the plates of the wallet with *screws*—it is not "removably attached" via engaging of a hook with an undercut:

**Accused Product**



*(See also, e.g.*, ECF No. 13-18 at 2–7). Plaintiff added the money clip element to overcome the examiner's rejection:

1. (Currently amended) A compact wallet, comprising:

at least two rigid plates interposed to sandwich card-like contents there between, each rigid plate having a longitudinal extent;

at least one encircling elastic band interposed with the at least two rigid plates along longitudinal extents thereof to bias them inwardly and securely hold the card-like contents while providing elastic volume there between for adding or removing contents; ~~and~~

a channeling means configured to minimize the profile of the wallet and hold position of the at least one encircling elastic band with respect to each rigid plate while allowing freedom for the dynamic extension and contraction of the band over the entire running length thereof; and

an auxiliary feature removably attached to at least one of the at least two rigid plates, the auxiliary feature having a tang insertable into a recess formed inside the at least two rigid plates, the tang having a hook, the hook extending at an angle to the tang, the hook engaging an undercut of the recess to prevent inadvertent dislodgement of the auxiliary feature from the recess,

whereby, card-like contents may be carried with minimal silhouette on or with a person while allowing expandable capacity and ready access to individual contents from between the at least two rigid plates.


14. (Currently amended)  A compact wallet, comprising:

at least two rigid plates interposed to sandwich card-like contents there between, each rigid plate having a groove along a longitudinal extent thereof;

at least one encircling elastic band slidingly interposed in the grooves to bias the at least two rigid plates inwardly and securely hold the card-like contents while providing elastic volume there between for adding or removing contents, the grooves configured to hold position of the at least one encircling elastic band with respect to each rigid plate while allowing freedom for the dynamic extension and contraction of the band over the entire running length thereof; and

a recess formed inside at least one of the at least two rigid plates, the recess operable to receive a tang of an auxiliary feature, the recess having an undercut operable to engage a hook of the tang to prevent inadvertent dislodgement of the auxiliary feature from the recess when the auxiliary feature is removably positioned in at least one of the at least two rigid plates, the hook extending at an angle to the tang,

whereby, card-like contents may be carried with minimal silhouette on or with a person while allowing expandable capacity and ready access to individual contents from between the at least two rigid plates.


*See* U.S. Pat. Appl. No. 14/706,019, 5/27/20 Amend. at pp. 2 & 4 of 18.

2.  **Allowable Subject Matter**:  Note the disclosure NPL (09/19/2018).  This disclosure does not have the limitation of the recess having an undercut operable to engage a hook of the tang.

3.  Claims 1-24 are allowed.

& 8/31/20 Notice of Allowance (explaining that the cited prior art "does not have the limitation of the recess having an undercut operable to engage a hook of the tang").

Because the FAC does not (and cannot) plausibly allege that Defendant's accused wallet includes this required structure, dismissal is appropriate. *See, e.g.*, *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141–42 (Fed. Cir. 2018) (affirming dismissal where element could not be construed to cover accused device, "in view of the specification and the prosecution history"); *Amgen Inc. v. Coherus BioSciences, Inc.*, 931 F.3d 1154 (Fed. Cir. 2019) (affirming grant of motion to dismiss because "district court did not err in determining that prosecution history estoppel bars Amgen from succeeding on its infringement claim under the doctrine of equivalents"); *Eagle Pharms., Inc. v. Slayback Pharma LLC*, 382 F. Supp. 3d 341, 346 (D. Del. May 9, 2019) (holding that "purely legal dispute[s]" that turn on "the clear and unambiguous prosecution history" can be decided at the pleadings stage).

## 2.  The Allegations in the FAC Do Not, and Cannot, Support a Claim for Indirect Infringement

The FAC's claims of induced and contributory infringement (FAC ¶¶ 71–72) should also be dismissed, at least because there is no direct infringement.  *See, e.g.*, *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006) ("[T]he patentee always has the burden to show direct infringement for each instance of indirect infringement.").

The claims should also be dismissed because the FAC fails to plausibly allege "knowledge that the [allegedly] induced acts constitute patent infringement," which is required for both induced infringement and contributory infringement claims. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66 (2011); *see also DSU*, 471 F.3d at 1304; *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964) (holding that contributory infringement under 35 U.S.C. § 271(c) "require[s] a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing").

The FAC alleges that Defendants "knew of the '808 Patent at least as early as January 10, 2023, and knew that its subsequent making, using, selling, offering for sale, and/or importation would cause purchasers to directly infringe at least Claims 1 and 14 of the '808 Patent." (FAC ¶¶ 71, 72). But "knowledge of the [asserted] patent[] alone is insufficient to establish the mental state required for an indirect infringement claim." *Guzik Tech. Enterprises, Inc. v. W. Digital Corp.*, No. 11-CV-03786-PSG, 2012 WL 1669355, at *3 (N.D. Cal. May 11, 2012); *LaserDynamics USA, LLC v. Cinram Grp., Inc.*, No. 15 CIV. 1629 RWS, 2015 WL 6657258, at *6 (S.D.N.Y. Oct. 30, 2015) (To state a claim for induced infringement, "the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement."). Here, the FAC does not offer any facts that render it plausible that Defendant acted with the specific intent that is required for indirect infringement.

The FAC merely couches its direct infringement claims as also constituting induced and contributory infringement claims. With respect to its inducement theory, the FAC makes the conclusory allegation that, "[Defendant] actively induces infringement of at least Claims 1 and 14 of the '808 Patent by selling the Accused Products in such a way that users are instructed to make

and/or use a wallet that infringes the '808 Patent. See, for example, Exhibit 21, describing how to push cards out of the wallet for easy access." (FAC ¶ 71.) With respect to its contributory infringement theory, the FAC again makes the conclusory allegation that "end user[s] directly infringe[] Claims 1 and 14 of the '808 Patent" by "us[ing] the Accused Products." But the FAC shows that Defendant has always maintained that its accused wallets (and thus use thereof) ***do not*** directly infringe the '808 Patent. (FAC ¶ 58; ECF No. 13-18.) The FAC's failure to provide any facts supporting specific intent warrants dismissal. *See, e.g.*, *Straight Path IP Grp., Inc. v. Vonage Holdings Corp.*, No. CIV.A. 14-502 JLL, 2014 WL 1266623, at *3 (D.N.J. Mar. 26, 2014) (dismissing inducement claims where only allegation stated that defendant "knowingly instructed its customers to use the Accused Products" and cited defendant's website); *Michigan Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, 472 F. Supp. 3d 377, 385 (E.D. Mich. 2020) (finding allegation that defendants "distribut[ed] the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities" insufficient to allege specific intent to encourage infringement); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) ("mere knowledge of possible infringement will not suffice" to show specific intent); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1364 (Fed. Cir. 2017) (affirming district court's dismissal of induced infringement claims and denial of leave to amend) (citing DSU, 471 F.3d at 1305).

### 3.    The Allegations in the FAC Do Not, and Cannot, Support a Claim for Willful Infringement

The FAC's claims of willful infringement (FAC ¶¶ 1, 76, 89) should also be dismissed, at least because there is no direct infringement. And, Plaintiff's pre-suit notices do not support a finding of willfulness, at least because they did not give "notice of *how* it is that [Defendant was]

said to infringe the asserted patent[].”  *Valinge Innovation AB v. Halstead New England Corp.*, No. CV 16-1082, 2018 WL 2411218, at *2 (D. Del. May 29, 2018)).

### 4. Plaintiff Concedes That the Patent Claim Is Limited by the Marking Statute

In the event that Plaintiff’s patent infringement claim survives, any claim for damages prior to the date of actual notice of the patent must be dismissed.

Under the Patent Act, a patentee can recover damages for infringement committed within 6 years of filing suit. See 35 U.S.C. § 286. However, this provision is limited by the Marking Statute, which provides that, “[w]hen a patented article has been produced by a patentee . . . , ***the amount of damages the patentee can recover . . . is statutorily limited to those acts of infringement that occurred <u>after</u> the patentee gave the alleged infringer ‘notice of infringement*.*’*” *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001) (citing 35 U.S.C. § 287(a)). Notice can be actual or constructive. 35 U.S.C. § 287(a).

The patentee bears the “***burden of <u>pleading</u>*** and proving at trial that she complied with the statutory requirements [of 35 U.S.C. Section 287(a)].” *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996). Thus, allegations of infringement prior to actual notice (any and claim for pre-suit damages) must be dismissed where the plaintiff fails to plead compliance with the marking statute or plead facts sufficient to show that actual notice was provided to the defendant. *Blackbird Tech LLC v. Argento SC By Sicura, Inc.*, No. 21-cv-11018 (DLC), 2022 WL 3701084, at *1 (S.D.N.Y. Aug. 26, 2022) (dismissing claim for pre-suit damages, with prejudice, where amended complaint failed to plead compliance with the marking statute); *see also Xiamen Baby Pretty Prod. Co. v. Talbot’s Pharms. Fam. Prod., LLC*, No. 3:21-CV-00409, 2022 WL 509336, at *2 (W.D. La. Feb. 18, 2022) (granting motion to dismiss claim for pre-suit damages where plaintiff failed to plead either constructive notice through compliance with the marking statute or actual notice);

*PLC Trenching Co., LLC v. IM Servs. Grp., LLC*, No. 1:20-CV-00602-CWD, 2021 WL 3234590, at *9–10 (D. Idaho July 29, 2021) (same); *Cognex Corp. v. Microscan Sys., Inc.*, 990 F. Supp. 2d 408, 417 (S.D.N.Y. 2013) (same); *e-Watch Inc. v. Avigilon Corp.*, No. CIV.A. H-13-0347, 2013 WL 5231521, at *3 (S.D. Tex. Sept. 16, 2013)) (same); *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001) (affirming district court's order granting a motion to dismiss where the relevant products were not marked).

The FAC's only allegation of marking is that "Ridge has complied with 35 U.S.C. § 287 . . . by virtually marking its patented products on its website." (FAC ¶ 77.) This is insufficient. Plaintiff does not allege ***when*** such alleged marking began, nor that the ***products*** were properly marked with the referenced website. *See, e.g.*, *Blackbird*, 2022 WL 3701084, at *1 (dismissing pre-suit damages where complaint merely alleged that "[a]ll marking requirements under 35 U.S.C. § 287 have been complied with"); *A to Z Machining Serv., LLC v. Nat'l Storm Shelter, LLC*, No. CIV-10-422-C, 2011 WL 6888543, at *3 (W.D. Okla. Dec. 29, 2011) ("[A] website alone would not satisfy the notice requirements under § 287(a)[.]").

In response to Defendant's first pre-motion letter raising this issue (ECF No. 11 at 3), Plaintiff failed to address this issue when amending its complaint.  Instead, Plaintiff points to a letter it sent to Defendant's counsel (ECF No. 13-19) a few weeks prior to the filing of its initial complaint to argue that it gave "pre-filing" notice. (ECF No. 16 at 3.)

First, the letter did not provide the requisite notice that the accused wallet allegedly infringe the '808 Patent; rather, the letter made no specific charge of patent infringement. *See Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) ("Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device."); *Chrimar Sys. Inc. v. Ruckus Wireless, Inc.*, No. 16-CV-00186-SI, 2020 WL 4431787, at

*7 (N.D. Cal. July 31, 2020) (letter that identified patent but did not "offer any explanation of why [plaintiff] believed any of defendants' products might infringe the [patent]" fails to constitute actual notice).

In all events, even if this letter constitutes "notice," it merely moves the damages start date back a few weeks. Any claim for damages prior to the date of this letter should be dismissed.

### C.    The FAC Should Be Dismissed With Prejudice

As noted above, the instant FAC is Plaintiff's second bite at the apple.  Plaintiff has been put on notice of the above arguments, including in Defendant's first and second pre-motion letters. Despite such notice of the specific deficiencies in Plaintiff's prior pleading, Plaintiff failed to cure these deficiencies in its FAC or thereafter.  Because Plaintiff has already had opportunities to amend its complaint (and because amendment would be futile), Plaintiff's FAC should be dismissed with prejudice.  *See, e.g.*, *Benedict v. Amaducci*, 101 F.3d 1393 (2d Cir. 1996) (affirming dismissal with prejudice where plaintiffs had two opportunities to amend their complaint); *In re Am. Express Co. Shareholder Litig.*, 39 F.3d 395, 402 (2d Cir.1994) (same); *Eliya*, 2018 WL 1796228, at *10 ("Given the multiple opportunities Eliya has been afforded to amend its complaint, the Court finds that any further attempt to replead would be futile and therefore recommends that the FAC be dismissed with prejudice.").

## V.    CONCLUSION

For the reasons set forth above, the FAC should be dismissed in its entirety, with prejudice.

Respectfully submitted,

Dated: August 31, 2023                    By: *s/ Tuvia Rotberg*
                                                     Tuvia Rotberg
                                                     Sandra A. Hudak
                                                     TARTER KRINSKY & DROGIN LLP
                                                     1350 Broadway
                                                   New York, NY 10018
                                                   Tel.:   (212) 216-8000
                                                   Fax:   (212) 216-8001
                                                   E-mail:  trotberg@tarterkrinsky.com
                                                                shudak@tarterkrinsky.com

                                                  ***Attorneys for Defendant Bemmo Inc.***