**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

THE RIDGE WALLET, LLC,

                Plaintiff,

v.

BEMMO INC.,

                Defendant.

Case No. 1:23-cv-02091-EK-TAM

**PLAINTIFF' RESPONSE IN OPPOSITION TO**
**<u>DEFENDANT BEMMO INC.'S MOTION TO DISMISS</u>**

**Date of Service:  October 2, 2023**

## <u>TABLE OF CONTENTS</u>

I.    **INTRODUCTION** .................................................................................................1

II.   **FACTUAL BACKGROUND** ..............................................................................2

    A.  Procedural Posture ..........................................................................................2

    B.  The Asserted Intellectual Property ................................................................2

III.  **LEGAL STANDARD** .........................................................................................3

IV.  **ARGUMENT** ......................................................................................................3

    A.  Ridge Has Sufficiently Pled Trade Dress Infringement ................................3

        1.  The FAC Precisely Identifies the Forged Ember Trade Dress ................4

        2.  The FAC Alleges the Trade Dress Is Non-Functional ...........................5

        3.  The FAC Alleges Secondary Meaning .................................................8

        4.  The FAC Alleges Likelihood of Confusion ........................................11

    B.  Ridge Has Sufficiently Pled Patent Infringement ......................................14

        1.  Defendant's Direct Patent Infringement ............................................14

        2.  Defendant's Intentional Torts ............................................................16

        3.  Ridge Complied With 35 U.S.C. § 287 ..............................................18

    C.  The FAC Should Not Be Dismissed With Prejudice ...................................19

V.    **CONCLUSION**..................................................................................................19

i

# TABLE OF AUTHORITIES

**CASES**

*A to Z Machining Serv., LLC v. Nat'l Storm Shelter, LLC*,
　No. CIV-10-422-C, 2011 WL 6888543 (W.D. Okla. Dec. 29, 2011) ..................................... 19

*Amgen Inc. v. Coherus BioSciences, Inc.*,
　931 F.3d 1154 (Fed. Cir. 2019) ............................................................... 17

*Ashcroft v. Iqbal*,
　556 U.S. 662, 129 S. Ct. 1937 (2009) ....................................................... 4

*Bath & Body Works Brand Mgmt., Inc. v. Summit Entm't, LLC*,
　7 F.Supp.3d 385 (S.D.N.Y. 2014) ........................................................... 13

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 554 (2007) ........................................................................ 4

*Bernheim v. Litt*,
　79 F.3d 318 (2d Cir. 1999) ................................................................. 4

*Blackbird Tech LLC v. Argento SC By Sicura, Inc.*,
　No. 21-cv-11018 (DLC), 2022 WL 3701084, at *1 (S.D.N.Y. Aug. 26, 2022) ..................... 19

*Cardinal Motors, Inc. v. H&H Sports Protection USA, Inc.*,
　No. 20-cv-7899-PAC, 2021 WL 4109721 (S.D.N.Y. Sept. 8, 2022) ............................... 6

*Cartier, Inc. v. Sardell Jewlry, Inc.*,
　294 Fed.Appx. 615 (2d Cir. 2008) ........................................................... 7

*Christian Louboutin S.A. v. Yves Saint Laurent Am.*,
　696 F.3d 206 (2d Cir. 2012) ................................................................ 9

*Clark St. Wine & Spirits v. Emporos Sys. Corp.*,
　754 F.Supp.2d 474 (E.D.N.Y. Nov. 24, 2010) ................................................. 4

*Eagle Pharms., Inc. v. Slayback Pharma LLC*,
　382 F. Supp. 3d 341 (D. Del. May 9, 2019) .................................................. 17

*Eliya, Inc. v. Kohl's Corp.*,
　No. CV 15-2123 (JFB) (GRB), 2016 WL 929266 (E.D.N.Y. Feb. 22 2016) ........................ 20

ii

*Epos Techs. Ltd. v. Pegasus Techs*,
766 F. 3d 1338 (Fed. Cir. 2014) ................................................................. 16

*First Brands Corp. v. Fred Meyer, Inc.*,
809 F.2d 1378 (9th Cir. 1987) ..................................................................... 8

*Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*,
454 F.Supp.3d 299 (S.D.N.Y. 2020) ........................................................... 5

*Fonte v. Bd. of Managers of Continental Towers Condo.*,
848 F.2d 24 (2d Cir. 1988) ......................................................................... 13

*Friedl v. City of New York*,
210 F.3d 79 (2d Cir. 2000) .......................................................................... 13

*GeigTech East Bay LLC v. Lutron Elecs. Co., Inc.*,
352 F.Supp.3d 265 (S.D.N.Y. Nov. 29, 2018) ............................................ 6

*Geisler v. Petrocelli*,
616 F.2d 636 (2d Cir. 1980) ......................................................................... 4

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*,
826 F.3d 27 (2d Cir. 2016) ......................................................................... 14

*Guzik Tech. Enterprises, Inc. v. W. Digital Corp.*,
No. 11-CV-03786-PSG, 2012 WL 1669355 (N.D. Cal. May 11, 2012) .................. 18

*In re Owens-Corning Fiberglas Corp.*,
774 F.2d 1116 (Fed. Cir. 1985) .................................................................... 8

*Int'l Leisure Prods., Inc. v. FUNBOY LLC*,
747 Fed.Appx. 23 (2d Cir. 2018) ................................................................. 6

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
456 U.S. 844 (1982) ................................................................................. 6, 9

*Knitwaves, Inc. v. Lollytogs Ltd. Inc.*,
71. F.3d 996 (2d Cir. 1995) .......................................................................... 7

*Kuebel v. Black & Decker Inc.*,
643 F.3d 352 (2d Cir. 2011) ....................................................................... 17

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
   113 F.3d 373 (2d Cir. 1997) ........................................................................ 5, 7

*Lang v. Ret. Living Publ'g Co.*,
   949 F.2d 576 (2d Cir. 1991) ........................................................................ 12

*Liebel-Flarsheim v. Medrad, Inc.*,
   358 F.3d 898 (Fed.Cir.2004) ...................................................................... 16

*Marchon Eyewear, Inc. v. Tura LP*,
   2002 WL 31253199 (E.D.N.Y. Sept. 30, 2002) ........................................ 20

*Mattel, Inc. v. MGA Entm't Inc.*,
   782 F.Supp.2d 911 (C.D. Cal. 2011) ........................................................... 9

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*,
   818 F.2d 254 (2d Cir. 1987) ........................................................................ 15

*Morningside Grp. Ltd. v. Morningside Capital Grp., LLC*,
   182 F.3d 133 (2d Cir. 1999) .................................................................. 13, 14

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
   704 F.Supp.2d 305 (S.D.N.Y. Mar. 9, 2010) ............................................ 15

*NSI Int'l Inc. v. Horizon Grp. USA, Inc.*,
   No. 20-cv-8389 (JGK), 2021 WL 3038497 (S.D.N.Y. July 16, 2021) ........ 6

*Ottah v. Fiat Chrysler*,
   884 F.3d 1135 (Fed. Cir. 2018) .................................................................. 17

*P&P Imps. LLC v. Johnson Enters., LLC*,
   46 F.4th 953 (9th Cir. 2022) ....................................................................... 11

*Polaroid Corp. v. Polarad Elecs. Corp.*,
   287 F.2d 492 (2d Cir. 1961) ........................................................................ 12

*Qualitex Co. v. Jacobson Prods., Co.*,
   514 U.S. 159 (1995) ................................................................................ 6, 8

*See Virgin Enters. Ltd. v. Nawab*,
   335 F.3d 141 (2d Cir. 2003) ........................................................................ 12

*Shandong Shinho Food Indus. Co. v. Mayflower Int'l, Inc.*,
    521 F.Supp.3d 222 (E.D.N.Y. Feb. 25, 2021)........................................................ 5, 20

*Sherwood 48 Assocs. v. Sony Corp. of Am.*,
    76 Fed. Appx. 389 (2d Cir. 2003) ........................................................................... 5

*Uni-Sys., LLC v. US Tennis Assoc.*,
    350 F.Supp.3d 143 (E.D.N.Y. Oct. 5, 2018) .......................................................... 20

*Van Praagh v. Gratton*,
    993 F.Supp.2d 293 (E.D.N.Y. 2014).................................................................. 13, 14

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
    529 U.S. 205 (2000) ........................................................................................... 9, 12

*Xiamen Baby Pretty Prod. Co. v. Talbot's Pharms. Fam. Prod., LLC*,
    No. 3:21-CV-00409, 2022 WL 509336 (W.D. La. Feb. 18, 2022)......................... 19

*Yurman Design, Inc. v. PAJ, Inc.*,
    262 F.3d 101 (2d Cir. 2001).................................................................................. 5, 6

**STATUTES**
35 U.S.C. § 287............................................................................................................. 19

**RULES**
Fed. R. Civ. P. 12(b)(6)................................................................................................. 13

Fed. R. Civ. P. 15(a)(2)................................................................................................. 20

Pursuant to the Court's Order dated August 1, 2023, Plaintiff The Ridge Wallet LLC ("Ridge" or "Plaintiff") hereby submits its Response in opposition to Defendant Bemmo Inc.'s ("Bemmo" or "Defendant") Motion to Dismiss the First Amended Complaint (the "Motion") under Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, Ridge respectfully requests that the Court deny Defendant's Motion in its entirety.

## I.     INTRODUCTION

The present Motion fails for two primary reasons.  First, Defendant Bemmo unreasonably demands a level of detail regarding the "Forged Ember" trade dress that exceeds the requirements set forth by the Federal Rules of Civil Procedure and existing authority.  Rather than attempting to explain *why* the pleaded facts are apparently inadequate, Defendant simply recites portions of Ridge's First Amended Complaint ("FAC"), coupled with inapposite case law, to summarily conclude the FAC is deficient.  Second, Defendant applies an inappropriately high standard to the pleadings phase of litigation, improperly asking the Court to evaluate the veracity of Ridge's factual allegations rather than the sufficiency thereof.  Defendant effectually presents non-infringement arguments masquerading as a motion to dismiss.

With regard to Defendant's arguments about Ridge's patent infringement claim, Defendant ignores portions of the pleadings and asks this Court to resolve factual disputes at the pleadings stage, in contravention to the requirement that the facts as pled be viewed in the light most favorable to Ridge.

Ridge properly seeks to protect its intellectual property through well-pled claims grounded in existing law and supported by non-conclusory factual contentions sufficient to establish cognizable causes of action.  For these reasons, as described in further detail below, Ridge respectfully submits that Defendant's Motion should be denied.

1

## II.    FACTUAL BACKGROUND

### A.    Procedural Posture

Plaintiff Ridge filed its Complaint against Defendant Bemmo on March 17, 2023, asserting infringement of Ridge's U.S. Patent No. 10,791,808 (the "'808 Patent") and "Forged Ember" trade dress.  Dkt. No. 1.  Defendant responded via a letter motion to the Court, seeking a pre-motion conference and asserting, among other things, that the Complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 11.  Ridge responded on June 5, 2023 (Dkt. No. 12), and despite its belief that the claims as pled in the original Complaint were more than sufficient to survive a motion to dismiss, Ridge filed its First Amended Complaint ("FAC") on June 20, 2023.  Dkt. No. 13.  On July 5, 2023, Defendant again moved for a pre-motion conference regarding its anticipated motion to dismiss (Dkt. No. 15), to which Ridge responded on July 10, 2023.  Dkt. No. 16.  On August 1, 2023, the Court entered its Order determining no pre-motion conference was necessary, and setting forth the briefing schedule for Defendant's Motion.  Defendant served the present Motion on August 31, 2023, pursuant to Local Rule III.C.2.  Ridge's response follows.

### B.    The Asserted Intellectual Property

Ridge is the owner, by assignment, of all right, title, and interest in U.S. Patent No. 10,791,808 (the "'808 Patent"), titled "Compact Wallet," which issued on October 6, 2020 naming Daniel Kane as the sole inventor.  The '808 Patent issued from U.S. Patent Application No. 15/421,596, filed February 1, 2017.

Ridge further owns rights and protectable interests in the Ridge "Forged Ember" trade dress pursuant to 15 U.S.C. § 1125.  Ridge filed U.S. Trademark Application No. 98/044,380 on June

15, 2023, covering the "Forged Ember" trade dress.  The application is currently awaiting examination.

## III.    LEGAL STANDARD

To survive a motion to dismiss, a complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citations omitted).  However, "asking for plausible grounds to infer [a claim] does not impose a probability requirement at the pleadings stage." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570.  This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Further, after "accept[ing] the plaintiff's factual allegations as true and drawing all reasonable inferences in plaintiff's favor," the Court need only "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Clark St. Wine & Spirits v. Emporos Sys. Corp.*, 754 F.Supp.2d 474, 479 (E.D.N.Y. Nov. 24, 2010) (quoting *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1999); *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

## IV.    ARGUMENT

### A.    <u>Ridge Has Sufficiently Pled Trade Dress Infringement</u>

"To plead a claim of trade dress infringement involving the appearance of a product, [a plaintiff] must allege that (1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the plaintiff's good and the defendant's." *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. Appx. 389, 391 (2d Cir.

2003) (citations omitted).  A plaintiff must also provide "a precise expression of the character and scope of the claimed trade dress."  *Id.* (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)).

### 1.    The FAC Precisely Identifies the Forged Ember Trade Dress

Defendant improperly demands an identification of the Forged Ember trade dress beyond that which is actually required.  Notably, "[t]he trade dress of works that are decorative or artistic may be harder to capture in words, and may need descriptions more broadly framed, or may need drawings," but may nonetheless be identified by "point[ing] to the elements and features that distinguish [the] trade dress." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 117 (2d Cir. 2001). That is precisely what Ridge has done here.  The FAC identifies key design features of the Forged Ember trade dress that distinguish them from other commercially available wallets, describing the "styling of a compact wallet, which includes irregularly-shaped geometric red speckling pattern on a carbon fiber surface, consisting of various shades of gray and black, positioned to cover one or more of the wallet's exterior plates."  FAC ¶ 44, Exhibit 5.

Both this Court and other courts within the Second Circuit have found comparable descriptions "sufficiently precise." *See, e.g., Shandong Shinho Food Indus. Co. v. Mayflower Int'l, Inc.*, 521 F.Supp.3d 222, 256 (E.D.N.Y. Feb. 25, 2021) (finding plaintiff sufficiently "describe[d] the various colors included on the container, the imaging on the container, the shape of the container, and the strips running across the product."); *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, 454 F.Supp.3d 299, 249 (S.D.N.Y.) ("the Court has already found that [plaintiff] has recited in specific detail the geometric and aesthetic characteristics of its trade dress in a manner that is sufficiently precise.") (internal quotations omitted).  And, notably, the cases Defendant cites to support its contrary argument are remarkably distinct from the facts at issue here. *See, e.g., Int'l*

*Leisure Prods., Inc. v. FUNBOY LLC*, 747 Fed.Appx. 23, 25 (2d Cir. 2018) (rejecting subjective descriptors such as "pleasing appearance" and "aesthetic proportion"); *Cardinal Motors, Inc. v. H&H Sports Protection USA, Inc.*, No. 20-cv-7899-PAC, 2021 WL 4109721 at *3 (S.D.N.Y. Sept. 8, 2022) (rejecting vague descriptors such as "substantially curved," "very roughly flattish," "relatively large," and "relatively thin"); *NSI Int'l Inc. v. Horizon Grp. USA, Inc.*, No. 20-cv-8389 (JGK), 2021 WL 3038497 at *6 (S.D.N.Y. July 16, 2021) (rejecting imprecise descriptors such as "general graphic setup," "photography of the components from the same view," and "similar placement of the name and logo."); *see also Yurman Design, Inc.*, 262 F.3d at 117 (rejecting generic description of "the artistic combination of cable jewelry with other elements"). Accordingly, Ridge has identified the Forged Ember trade dress with sufficient precision.

### 2.    The FAC Alleges the Trade Dress is Non-Functional.

Trade dress may be "traditionally" functional or "aesthetically" functional—each with its own test for determining the same.  Trade dress is traditionally functional "if it is essential to the use or purpose of the article or affects the cost or quality of the article" (*Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 (1982)), and aesthetically functional if exclusive use of the feature "would put competitors at a significant non-reputation-related disadvantage."  *Qualitex Co. v. Jacobson Prods., Co.*, 514 U.S. 159, 165 (1995).  However, "[b]ecause functionality is a question of fact, ***it is often premature to conclude that a plaintiff has failed to establish functionality at the motion to dismiss stage***."  *GeigTech East Bay LLC v. Lutron Elecs. Co., Inc.*, 352 F.Supp.3d 265, 278 (S.D.N.Y. Nov. 29, 2018) (citations omitted) (emphasis added).

Here, Ridge has sufficiently alleged the Forged Ember trade dress is non-functional under both standards of functionality.  As to traditional utilitarian functionality, the FAC explains that the functionality of Ridge's compact wallets do not hinge upon the Forged Ember trade dress, as

"demonstrated by the host of other compact wallets sold by Ridge that do not use the Forged Ember Trade Dress, but nonetheless function appropriately." FAC ¶ 48. *See Cartier, Inc. v. Sardell Jewlry, Inc.*, 294 Fed.Appx. 615, 620-21 (2d Cir. 2008) (noting "the ultimate test is whether the feature is dictated by the function to be performed") (finding trade dress for watches with square faces and roman numerals "not 'functional' because there are many alternative designs that could perform the same function."). The FAC also contends that the quality of Ridge's wallets remains unaffected by the presence or absence of the Forged Ember trade dress, in that ***all*** of Ridge's compact wallets—including those bearing the Forged Ember trade dress—are of the highest quality. FAC ¶ 33.

In regard to aesthetic functionality, the FAC further identifies that "[n]umerous other non-infringing, non-dilutive designs are available that are equally feasible and efficient, none of which necessitate copying the Ridge Forged Ember Trade Dress," as demonstrated by "multiple other wallet manufacturers [that] compete successfully without copying the unique Ridge Forged Ember Trade Dress." *Id.* ¶ 49; *see Landscape Forms, Inc.*, 70 F.3d at 253 (holding that "in order for a court to find a product design functional, it must first find that certain features of the design are essential to effective competition in a particular market."). Despite Defendant's assertion that the existence of alternative designs does not render Ridge's trade dress non-functional (Motion at 10), the Second Circuit has indicated otherwise, finding that whether an aesthetic feature hinders competition, such that it is aesthetically functional, is based upon the "range of adequate alternative designs" beyond the claimed feature. *Knitwaves, Inc. v. Lollytogs Ltd. Inc.*, 71. F.3d 996, 1006 (2d Cir. 1995) (finding plaintiff's designs non-functional because protection of "fall motif" designs would not preclude competitors from using "fall colors or motifs, squirrels or leaves" and "would preclude only the use of designs so similar as to create likelihood of confusion."). Ridge's Forged

Ember trade dress does not preclude competitors from using "a specific color for a fashion product," as Defendant inaccurately contends. *See* Motion at 10. It merely precludes the use of designs ***confusingly similar*** to Ridge's Forged Ember trade dress, leaving a nearly-infinite range of alternative designs—including those that use the colors red, gray, black, or a combination thereof—that may be used by competitors. *See id.*; *see also Quiltex*, 514 U.S. at 166 (finding a green-gold color for dry cleaning pads "acts as a symbol" to "identif[y] the press pads' source," and is, therefore, non-functional); *In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 1123 (Fed. Cir. 1985) (concluding that the "use of the color 'pink' [for fiberglass insulation] performs no non-trademark function, and is consistent with the commercial and public purposes of trademarks.").

Moreover, Defendant cites to various inapposite cases to support its argument that Ridge "cannot plausibly allege the few trade dress elements it identifies are non-functional" because "[t]he colors black and red are basic colors used in fashion articles." Motion at 10. This simplified reasoning, however, is unsupported by the Ninth Circuit (persuasive, but non-binding) authorities cited by Defendant. For example, in *First Brands Corp. v. Fred Meyer, Inc.*, the Ninth Circuit did not simply find that "the color yellow used on an ordinary shaped container" is inherently functional, as Defendant submits (Motion at 10), but rather that "a competitive need for the color yellow existed for the antifreeze packing industry and . . . that the color yellow in combination with the [industry standard] F-style jug had not achieved a secondary meaning," such that it could be deemed nonfunctional. 809 F.2d 1378, 1382 (9th Cir. 1987). However, there is a stark difference between a competitive need for the color yellow to identify ***hazardous material*** and a multi-colored pattern used on a ***consumer goods product***. *See id.* Defendant also cites to *Mattel, Inc. v. MGA Entertainment Inc.*, for the same proposition. 782 F.Supp.2d 911, 1006-07 (C.D. Cal.

2011).  There, however, the Court evaluated the functionality of trapezoidal packaging with "sloped sides [to] allow light to flow outwards and downwards in the direct of the product."  *Id.*  Those facts (*i.e.*, packaging designed to facilitate natural lighting) simply do not parallel the facts at issue here.

Accepted as true and viewed in the light most favorable to Ridge, the FAC has pled facts sufficient to show the Forged Ember trade dress is non-functional.

### 3.    The FAC Alleges Secondary Meaning.

Trade dress that is not inherently distinctive may, nonetheless, acquire distinctiveness—or "secondary meaning"—through use and promotion, such that "in the minds of the public, the primary significance of [the trade dress] is to identify the source of the product rather than the product itself."  *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000) (quoting *Inwood*, 456 U.S. at 851).  The Second Circuit uses various factors to determine whether trade dress has acquired secondary meaning such that it is entitled to protection under the Lanham Act, including: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of use."  *Christian Louboutin S.A. v. Yves Saint Laurent Am.*, 696 F.3d 206, 266 (2d Cir. 2012).  The FAC alleges sufficient facts responsive to each of these factors and, therefore, satisfies the secondary meaning requirement with regard to the Forged Ember trade dress.

*First*, the FAC alleges Ridge's extensive advertising expenditures related to the Forged Ember trade dress.  For example, it explains that "[s]ince 2021, Ridge has spent ***millions of dollars on marketing, advertising, and promoting its Forged Ember compact wallets, alone***, through platforms such as Facebook, Google, TikTok, Snapchat, Line Intent, Finimize, and more, as well

8

as numerous partnerships in the United States." FAC ¶ 28 (emphasis added). This is further demonstrated by the fact that Ridge is able to sell the Forged Ember compact wallets "in over 1,000 stores throughout the continental United States, including both major retailers, such as Nordstrom and Scheels, and many other smaller retailers." *Id.* ¶ 29.

*Second*, the FAC describes various examples of customers linking the Forged Ember trade dress to Ridge, as well as statistical information indicating the same. It states that "may reviewers of The Ridge Wallet simply refer to the wallet as 'The Ridge Forged Ember Wallet,'" and even includes an exhibit demonstrating the same. FAC ¶ 31, Exhibit 7 (describing the Forged Ember trade dress as "unforgettable"). It further explains that "Forged Ember queries **simply did not exist** before the launch of the Ridge Forged Ember Wallet in 2021, and now result in **tens of thousands of queries a year**." *Id.* ¶ 46 (emphasis added).

*Third*, the FAC identifies numerous examples of unsolicited media attention relating to Ridge's Forged Ember compact wallets, including articles from "FutureHowTo, Spy, and GearMoose, among many others," each of which is attached to the FAC. *Id.* ¶ 35, Exhibits 9-11. *See also id.* ¶ 45 ("The Ridge Forged ember Trade Dress is distinctive and has acquired secondary meaning through, *inter alia* . . . awards, and unsolicited media attention, as described above."), ¶31, Exhibit 7.

*Fourth*, the FAC identifies the enormous success of the Forged Ember trade dress, noting that "[f]or more than two years, Ridge has sold **millions of dollars'** worth of products **that display the Forged Ember trade dress**, including products embodying the '808 Patent." *Id.* ¶ 32 (emphasis added). *Compare id.*, *with* Motion at 7 (inaccurately alleging that "[w]hile the FAC alleges that Plaintiff 'has sold millions of dollars' worth of products,' it does not appear that that allegation is tied to the description of the alleged trade dress"). *See also, e.g.*, *id.* ¶ 29 (identifying numerous

web platforms and over 1,000 brick-and-mortar stores where Ridge's Forged Ember compact wallets are offered for sale, as well as those sold through Ridge's licensees).

*Fifth*, the FAC identifies instances of attempts to plagiarize the Forged Ember trade dress, as well as Ridge's extensive efforts to stop such plagiarism.  For example, it explains that "Ridge has scrupulously enforced and protected its Forged Ember Trade Dress and the '808 Patent against past infringers, including through Amazon takedown requests, countless cease and desist letters, numerous federal litigations, and even an ongoing International Trade Commission investigation (ITC Inv. No. 337-TA-1355)."  *Id.* ¶ 37.  Moreover, Defendant, itself, reflects yet another attempt to plagiarize the Forged Ember trade dress through its "Forged Carbon Red" wallet.  *See id.* ¶ 82-83, Exhibit 23.  *See also, e.g.*, *P&P Imps. LLC v. Johnson Enters., LLC*, 46 F.4th 953, 960-61 (9th Cir. 2022) (finding defendant's intentional copying of plaintiff's alleged trade dress suggests that it acquired secondary meaning).

*Sixth*, the FAC clearly articulates Ridge's exclusive use of the Forged Ember trade dress for over two years.  *See* FAC ¶ 28 (identifying Ridge's Forged Ember compact wallets were launched in 2021), 26 ("As a result of Ridge's widespread, exclusive, and continuous use of the Forged Ember Trade Dress to identify its compact wallets, and Ridge as their source . . ."), ¶ 36 ("Further, because of the exclusive and continuous use . . . of the Forged Ember Trade Dress in connection with Ridge's compact wallets, the Forged Ember Trade Dress has become distinctive, associated exclusively with Ridge . . ."), ¶ 45 ("Based on exclusivity after first launch . . . the Ridge Forged Ember Trade Dress has acquired secondary meaning and distinctiveness, and has become famous among consumers").  *See also, e.g.*, *id.* ¶ 46 ("Forged Ember queries simply did not exist before the launch of the Ridge Forged Ember Wallet in 2021, and now results in tens of thousands of queries a year.").

Moreover, the FAC explains how the Forged Ember trade dress primarily signifies Ridge as the source of the Forged Ember compact wallets. *See Wal-Mart Stores, Inc.*, 529 U.S. at 211. It states that Ridge uses "the Forged Ember Trade Dress to identify its compact wallets, and Ridge as their source," and that "[t]he Forged Ember Trade Dress functions as a direct link to the history of the Ridge Wallet, conveying to the public that a compact wallet bearing the Forged Ember Trade Dress is the reliable 'original.'" FAC ¶ 36. *See also id.* ("The Forged Ember Trade Dress is thus of tremendous value to Ridge, immediately communicating a host of positive attributes").

As demonstrated above, the FAC asserts facts more than sufficient to show the Forged Ember trade dress has acquired secondary meaning.

### 4.    The FAC Alleges Likelihood of Confusion.

The Second Circuit evaluates likelihood of confusion by non-mechanically applying the *Polaroid* factors, including: (1) the strength of the plaintiff's trade dress; (2) the degree of similarity between the trade dresses; (3) the proximity of the products in the marketplace; (4) the likelihood that the prior owner will bridge the gap and enter the defendant's market; (5) actual confusion; (6) the defendant's bad faith; (7) the quality of defendant's products; and (8) the sophistication of buyers in the relevant group of consumers. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961); *see Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 580 (2d Cir. 1991) (noting the factors are balanced, with no single factor being determinative). Here, the FAC sufficiently alleges likelihood of confusion.

As to the first factor, the Second Circuit determines the strength of a senior user's mark or trade dress by evaluating its distinctiveness. *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 147-48 (2d Cir. 2003). As described above, Ridge has sufficiently alleged that the Forged Ember trade dress has acquired distinctiveness through the applicable secondary considerations, indicating the

11

strength of the Forged Ember trade dress. However, the FAC alleges additional facts that further indicate the strength of the Forged Ember trade dress as well, including Ridge's extensive enforcement efforts against third-party infringers within the compact wallet market. *See* FAC ¶ 37 (identifying Ridge's enforcement of its rights in the Forged Ember Trade Dress); *Morningside Grp. Ltd. v. Morningside Capital Grp., LLC*, 182 F.3d 133, 139 (2d Cir. 1999) ("successful policing of a mark adds to its strength to the extent that it prevents weakening of the mark's distinctiveness in the relevant market"); *Bath & Body Works Brand Mgmt., Inc. v. Summit Entm't, LLC*, 7 F.Supp.3d 385, 394 (S.D.N.Y. 2014) (finding evidence of extensive "cease and desist communications" and the "initiat[ion] [of] proceedings to police the unauthorized use" to indicate the strength of a mark). And despite Defendant's contentions that "many competitors and designers of other goods have chosen similar designs" (Motion at 10-11[1]), the Second Circuit has found that "[u]se of a like mark in a different market for different products or services need not undermine the mark's strength in its own market." *Morningside Grp. Ltd.*, 182 F.3d at 139.

Further, the notable similarities between Defendant's "Forged Red Carbon" wallet and Ridge's Forged Ember compact wallet are readily apparent, as asserted in the FAC. It states that "[l]ike Ridge's Forged Ember Trade Dress, Bemmo's 'Forged Carbon Red' wallets consist of the overall exterior appearance and styling of a compact wallet, including an irregularly-shaped

---

[1] Despite Defendant's citations to various external sources with comparable designs, the Second Circuit has held that "pursuant to Fed. R. Civ. P. 12(b)(6), where matters outside the complaint are presented in connection with a Rule 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting materials." *Van Praagh v. Gratton*, 993 F.Supp.2d 293, 303 (E.D.N.Y. 2014) (internal quotations omitted) (citing *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000); *Fonte v. Bd. of Managers of Continental Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)). As previously noted, this further indicates Defendant's Motion is improperly masquerading as a motion for summary judgement.

geometric red speck[l]ing pattern on a carbon fiber surface, consisting of various shades of gray and black, positioned to cover the wallet's exterior plates."  FAC ¶ 83.  However, even in view of the remarkable similarities, this Court has specifically found that, "likelihood of confusion is a fact-intensive analysis that ordinarily ***does not lend itself to a motion to dismiss***."  *Van Praagh v. Gratton*, 993 F.Supp.2d 293, 303 (E.D.N.Y. 2014) (emphasis added).

Ridge's and Defendant's products are also squarely within the same market—and not just the wallet market as a whole, but a narrow subset of the market (to which Ridge is entitled to a monopoly) for compact wallets embodying Ridge's '808 Patent.  *See* FAC ¶ 85.  Resultantly, the fourth factor is not at issue here, as there is no gap that Ridge could further bridge between its Forged Ember compact wallet and Defendant's "Forged Red Carbon" wallet.

The FAC sufficiently alleges facts indicating actual confusion, as well.  Notably, the Second Circuit has explained that the "actual confusion" analysis is not only concerned with confusion at the point of sale, but in the pre-sale context as well.  *See Morningside Grp.*, 183 F.3d at 141; *see also Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 45 (2d Cir. 2016) (noting that "actual confusion is very difficult to prove" and evidence of actual confusion is not necessary to prevail on an infringement claim).  And as the FAC identifies, "[i]n the post-sale context, where actual or potential consumers of compact wallets may only see Bemmo's Accused Products in someone's pocket or hand in passing, consumers are also likely to mistake the source, affiliation, or sponsorship of Bemmo with Ridge and/or the asserted Forged Ember Trade Dress."  FAC ¶ 87.

Further, the FAC sufficiently alleges Defendant's bad faith in using the Forged Ember trade dress for its own products.  It explains that "[o]n information and belief, Bemmo likely intended to create associations with Ridge and to free ridge on Ridge's goodwill given that Ridge is the

13

leader in the compact wallet market and is seeking success with respect to its Forged Ember Wallets." *Id.* ¶ 85; *see also New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F.Supp.2d 305, 319 (S.D.N.Y. Mar. 9, 2010) ("The defendant's awareness of plaintiff's mark may give rise to an inference of bad faith, which is bolstered if the defendant offers no credible explanation for its adoption of the mark."). Further "[g]iven that Ridge was first to sell an '808 Patent-practicing compact wallet and subsequently a Forged Ember Wallet, the overwhelming similarities are due to Bemmo's intentional copying," which, notably, creates a presumption that confusion is likely to occur. *Id.*; *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987) ("Intentional copying gives rise to a presumption of a likelihood of confusion."). This factor certainly weighs in favor of a likelihood of confusion.

Lastly, the general sophistication of consumers in the compact wallet market, again, weighs in favor of finding a likelihood of confusion. As alleged in the FAC, "consumers of wallet[s] like those at issue here, are unlikely to exercise great care in resolving any confusion in their initial product interest, at the point of purchase, or in post-sale exposure." FAC ¶ 86. In fact, "[e]ven more sophisticated customers are likely to experience cognitive dissonance regarding the source, affiliation, sponsorship, or association of the Bemmo Accused Products when confronted with promotions and sales of Bemmo Accused Products." *Id.* Accordingly, the FAC has sufficiently alleged the likelihood of confusion between Defendant's "Forged Red Carbon" compact wallets, and Ridge's compact wallets bearing the Forged Ember trade dress.

In view of the foregoing, the FAC sufficiently states a claim for Defendant's infringement of the Forged Ember trade dress, and Defendant's Motion to dismiss should be denied.

**B.** **Ridge Has Sufficiently Pled Patent Infringement**

    **1.** **Defendant's Direct Patent Infringement**

Defendant's argument with regard to the patent claims in the FAC amounts to a claim construction argument attempting to resolve a factual dispute on the issue of patent infringement. In short, Defendant underlines certain terms in its recitation of the asserted independent claims of the '808 Patent.  Motion at 14-15.  It then asks this Court to do two improper things at the Motion to Dismiss phase:  (1) to construe the claims in an unsupportable way and (2) to make a factual determination that Defendant's products do not meet the underlined (and improperly construed) claim terms.  The Court should decline Defendant's invitation.

The extent of Defendant's attempt to have this Court construe the claims at the Motion to Dismiss phase is a four-line statement about plausibility, along with a reproduction of a Figure from the '808 Patent.  Motion at 15.  Defendant also mentions the claim elements it purports needed to be added to gain allowance.  Motion at 17-18.  Defendant thus asks this Court to limit the claims to a preferred embodiment of the '808 Patent in flagrant disregard for the Federal Circuit's black-letter law to the contrary:  "it is improper to read limitations from a preferred embodiment described in the specification…." *Epos Techs. Ltd. v. Pegasus Techs*, 766 F. 3d 1338, 1341 (Fed. Cir. 2014) (quoting *Liebel-Flarsheim v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed.Cir.2004)).  Defendant presents no reason to deviate from this well-understood, black-letter law with regard to the '808 Patent.

Separately, Defendant asks the Court to make a factual finding that its wallet products do not meet the claims of the '808 Patent.  It is unclear the basis for this requested factfinding, but in any event, the structures of Defendants' wallet products plainly meets the claims' recitations of "hooks," "tangs," and "undercuts."  And at the Motion to Dismiss stage, the detailed claim chart attached to the FAC as Exhibit 20 (Dkt. 13-20) must be taken as true and viewed in a light most

favorable to Ridge (*Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011)), and thus plainly presents a plausible theory of patent infringement.

Defendant's cited cases are inapposite. In *Ottah v. Fiat Chrysler*, a *pro se* Plaintiff attempted to assert a patent directed to "book holder assembly" to a "mobile camera device." 884 F.3d 1135, 1141 (Fed. Cir. 2018). The patent-in-suit there did not contain a single discussion of anything approaching a camera, so the Federal Circuit found dismissal was appropriate. *Id.* Here, however, Defendant's product is a knockoff of Ridge's wallets, is a "compact wallet" as required by the asserted claims, and meets each and every element of the asserted claims. *Ottah*'s outlier situation simply does not exist here. Further, Defendant's other cited cases deal with very specific and unique prosecution history-based arguments (prosecution history estoppel in *Amgen Inc. v. Coherus BioSciences, Inc.*, 931 F.3d 1154 (Fed. Cir. 2019) and the "disclosure-dedication doctrine" in *Eagle Pharms., Inc. v. Slayback Pharma LLC*, 382 F. Supp. 3d 341, 346 (D. Del. May 9, 2019)) that are plainly inapplicable here and, thus, irrelevant. *See* Motion at 18.

Defendant has not given this Court any reason to construe the claims at this early stage, and especially no reason to take the extraordinary step of limiting the claims to the preferred embodiments in the specification. Defendant also has not (and cannot) provide a reason to resolve disputes of fact at the motion to dismiss stage of the case. Accordingly, the Motion should be dismissed as to the claims for direct infringement.

## 2. Defendant's Intentional Torts

Defendant's Motion is perplexing with regard to the issues of indirect patent infringement and willful infringement, all of which are intentional torts predicated on Defendant's underlying direct patent infringement. The pleadings plainly establish that Ridge not only informed

16

Defendant of its '808 Patent, but repeatedly told Defendant its continued sale of wallets was infringing.

First, Ridge alleged that it submitted Amazon takedown requests based on Defendant's infringement of the '808 Patent on January 10, 2021, and January 21, 2023. FAC¶ 57. Defendant, fully understanding that Ridge had submitted a "report of patent infringement," responded to Ridge on January 27, 2023. *Id.* At Exhibit 18. Ridge then responded to Defendant's letter, further detailing its infringement; the FAC notes that this is the "third time" Ridge told Defendant it was infringing. *Id.* ¶ 57, Exhibit 19. The FAC further notes the flagrance of Defendant's continued activities: it alleges that Defendant has neither taken a license nor altered the functionality of any of its products. *Id.* ¶¶ 61-63. Particularly when the facts are taken in the light most favorable to Ridge (*i.e.*, that Defendant's responsive letter on January 27, 2023, is incorrect on the facts and law, and that Ridge's three notices are correct), Ridge's FAC plausibly pleads indirect and willful infringement, particularly when the pleading is read in its entirety (instead of the selective way in which Defendant suggests it should be read (Motion at 18-19)).

Defendant's cited cases focus on situations where the pled intentional torts are based solely on knowledge of the existence of a patent. *See, e.g.*, *Guzik Tech. Enterprises, Inc. v. W. Digital Corp.*, *No.* 11-CV-03786-PSG, 2012 WL 1669355, at *3 (N.D. Cal. May 11, 2012). Here, though, the FAC plainly contains pleadings beyond threadbare knowledge of the '808 Patent: Ridge specifically asserts that Defendant infringes, and thus all future sales are accompanied by the knowledge that the same would constitute infringement.

Finally, taking Defendant's position as true (*i.e.*, that a responsive letter alleging non-infringement is sufficient to defeat indirect and willful infringement claims at the pleading stage) would both ignore the Second Circuit's guidance about viewing all facts in the light most favorable

17

to Ridge, and would mean that it is impossible to pursue a claim for induced infringement where an infringer cobbles together unsupportable non-infringement arguments.

### 3.    Ridge Complied With 35 U.S.C. § 287

Defendant's last attempt to litigate the merits of the case at the Rule 12 stage deals with the issue of patent marking.  Ridge pled that "Ridge has complied with 35 U.S.C. § 287 with respect to the '808 Patent at least by virtually marking its patented products on its website."  FAC ¶ 77.  Defendant concedes this (Motion at 22), but fails to acknowledge that Ridge included its virtual marking page as an Exhibit to the FAC.  *Id.* At Exhibit 22.  This is very different than *Blackbird Tech LLC v. Argento SC By Sicura, Inc.*, on which Defendant relies, where the operative complaint contained only a bare pleading that "[a]ll marking requirements under 35 U.S.C. §287 have been complied with."  No. 21-cv-11018 (DLC), 2022 WL 3701084, at *1 (S.D.N.Y. Aug. 26, 2022).  Here, to the contrary, Ridge pled that it was relying on constructive notice, and included in the FAC the actual virtual marking webpage.  Thus, the FAC, as a whole, pleads (1) compliance with the marking statute by virtual marking and (2) the details of the compliant virtual marking.  Ridge pled constructive notice, as the *Xiamen* case cited by Defendant states would be sufficient. *Xiamen Baby Pretty Prod. Co. v. Talbot's Pharms. Fam. Prod., LLC*, No. 3:21-CV-00409, 2022 WL 509336, at *2 (W.D. La. Feb. 18, 2022).  And the single case Defendant cites to address Ridge's website comes from the Western District of Oklahoma, was postured as a summary judgment motion, and deals with conduct that predates the America Invents Act, which was notably amended to provide for more robust virtual marking opportunities.  *See, e.g.*, *A to Z Machining Serv., LLC v. Nat'l Storm Shelter, LLC*, No. CIV-10-422-C, 2011 WL 6888543, at *3 (W.D. Okla. Dec. 29, 2011).  Ridge's FAC is sufficient at the Motion to Dismiss stage with regard to patent marking, and Defendant's Motion should be denied on this point.

## V.    THE FAC SHOULD NOT BE DISMISSED WITH PREJUDICE

Nonetheless, should the Court find that Ridge has failed to sufficiently plead claims for trade dress infringement and/or patent infringement, neither claim should be dismissed with prejudice, and Ridge should, instead, be permitted to amend the FAC to cure any deficiencies pursuant to the Court's "usual practice." *See Eliya, Inc. v. Kohl's Corp.*, No. CV 15-2123 (JFB) (GRB), 2016 WL 929266, at *8 (E.D.N.Y. Feb. 22 2016) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."); Fed. R. Civ. P. 15(a)(2) (leave to file an amended complaint should be granted "freely…when justice so requires."); *Uni-Sys., LLC v. US Tennis Assoc.*, 350 F.Supp.3d 143, 160 (E.D.N.Y. Oct. 5, 2018) ("[U]nder this liberal standard, district courts should not deny leave to amend except where as the court finds futility, bad faith, undue delay, or undue prejudice to the opposing party."); *see also Shandong Shinho Food Indus. Co., Ltd.*, 521 F.Supp.3d at 264 (granting in part defendant's motion to dismiss trade dress infringement claims under the Lanham Act and permitting plaintiff to amend its second amended complaint within thirty days); *Marchon Eyewear, Inc. v. Tura LP*, 2002 WL 31253199, at *12 (E.D.N.Y. Sept. 30, 2002) (dismissing induced patent infringement claim without prejudice and permitting the plaintiff to seek leave to amend).

## VI.    CONCLUSION

As demonstrated above, Ridge has sufficiently stated a claim for infringement of the Forged Ember trade dress and the '808 Patent.  Accordingly, Ridge respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

Dated:  October 2, 2023

Respectfully submitted,

/s/ *Benjamin E. Weed*
Benjamin E. Weed
**THE RIDGE WALLET LLC**
104 Main Street, Suite 2C
Park Ridge, IL 60068
Tel:  (312) 372-1121
Ben@Ridge.com
Legal@Ridge.com

Matthew J. Weldon
Caroline M. Vermillion
**K&L GATES LLP**
599 Lexington Avenue
New York, NY 10022
Tel:  (212) 536-4042
Fax:  (212) 536-3901
Matthew.Weldon@klgates.com
Caroline.Vermillion@klgates.com

*Attorneys for Plaintiff*
*The Ridge Wallet LLC*